# UNTIED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

PEGGY WOODLEY,                    )
      Plaintiff,                    )
                               )
      v.                    )        CAUSE NO.: 2:05-CV-309-PRC
                               )
COMMISSIONER OF SOCIAL           )
SECURITY,                        )
      Defendant.                    )

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by the Plaintiff, Peggy Woodley, on August 16, 2005, and Plaintiff's Opening Brief [DE 12], filed by Mrs. Woodley on February 6, 2006.  Mrs. Woodley seeks judicial review of a denial of her request for alternate calculation and payment of Widow's Insurance Benefits pursuant to 42 U.S.C. § 405(g).  For the following reasons, the Court denies Mrs. Woodley's request to reverse and remand the decision of the Commissioner.

## PROCEDURAL AND FACTUAL BACKGROUND

On November 6, 1997, Mrs. Woodley filed concurrent applications for Widow's Disability Insurance Benefits ("WIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  On March 29, 2002, Administrative Law Judge ("ALJ") Robert Asbille issued a favorable decision granting Mrs. Woodley's applications with an onset date of March 1, 1997.  This decision was not appealed by the Social Security Administration ("SSA") or by Mrs. Woodley, and the decision became the final decision of the SSA regarding Mrs. Woodley's entitlement to disability benefits.

While awaiting this decision on her pending applications, Mrs. Woodley entered into a reimbursement authorization agreement ("Agreement") with the State of Indiana ("State") on

September 3, 1997.  The Agreement authorized the SSA to send Mrs. Woodley's initial payment of SSI benefits, equal to the amount of interim public assistance benefits previously received from the State, to the Indiana Department of Human Services or its designee, beginning the day of the month she was found eligible for SSI.  The Agreement further provided that, if Mrs. Woodley felt that the amount deducted from her initial payment of SSI benefits was incorrect, she had the right to a hearing before the Indiana Department of Human Services.

Mrs. Woodley's SSI award was effectuated in April 2002, with payments issued for months beginning with November 1997, the month after her date of filing.  The WIB claim was effectuated in May 2002, with entitlement beginning August 1997, the month she attained age 50 and the month after her five-month waiting period.

Pursuant to her Agreement with the State, Mrs. Woodley's initial payment of SSI ($27,604.00) was sent to the Indiana Township Association, Inc., which deducted from her initial payment an amount equal to the public assistance benefits she received while awaiting adjudication of her SSI claim, calculated to be $17,655.98.  The matter was then referred back to the Social Security Administration, with Mrs. Woodley to receive the remaining $9,948.02.

On May 14, 2002, the SSA issued Mrs. Woodley a letter stating that the retroactive WIB benefits otherwise payable were offset by the $27,604.00 in SSI benefits already paid by the SSA for the months of November 1997 through April 2002.  Mrs. Woodley challenged the SSI offset of WIB, but on February 12, 2003, the initial determination was affirmed on reconsideration.  On February 14, 2003, Mrs. Woodley requested an administrative hearing, contending that WIB should have been paid first "to avoid the windfall provision and overpayment." R. at 304.

2

On December 16, 2004, ALJ Asbille held a hearing in which Mrs. Woodley appeared with counsel and testified.  In a decision dated April 20, 2005, the ALJ found that the SSA "properly withheld $27,604 in widow's insurance benefits as an offset based on supplemental social security income benefits already paid for the same months" R. at 48.

After a timely appeal, the Appeals Council denied Mrs. Woodley's request for review of the ALJ's decision.  Therefore, ALJ Asbille's April 20, 2005 decision is the final decision of the Commissioner.

A Complaint was timely filed by Mrs. Woodley with this Court on August 16, 2005.  On October 19, 2005, the Commissioner filed an Answer and the Administrative Record.  Mrs. Woodley filed her Opening Brief on February 6, 2006.  On May 24, 2006, the Commissioner filed a Response, and on June 5, 2006, Mrs. Woodley filed a Reply.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636 and 42 U.S.C. § 405(g).

## ALJ ASBILLE'S DECISION

ALJ Asbille made the following findings in his April 20, 2005 decision:

1.  The claimant was determined to be eligible to supplemental security income benefits and widow's benefits (as a surviving divorced spouse) based in part on a finding of disability beginning March 1, 1997.  The decision awarding disability was made in March 2002 and benefits were authorized based on applications filed in October 1997.

2.  Retroactive SSI payments for months beginning November 1997 were issued in April and early May 2002.  Retroactive widow's payments followed later in May 2002.

3. The Administration withheld $27,604 from the widow's retroactive payments as an offset representing the amount of SSI paid that would not have been paid had the widow's benefits been issued contemporaneously with the months that they were due.

4. The SSI offset of $27,604 against the claimant's widow's insurance benefits was proper.

R. at 24-25.  In summary, ALJ Asbille concluded that the SSA's calculation of benefits was consistent with 20 C.F.R. § 404.408(b) ("Reduction of retroactive monthly social security benefits where supplemental security income (SSI) payments were received for the same period.").  ALJ Asbille further held that the SSA's authorization to reimburse a State or political subdivision for interim assistance payment is authorized by 20 C.F.R. § 416.525 and 1631(g) of the Social Security Act.  ALJ Asbille also held that formal guidelines call for the effectuation of an SSI claim first, followed by a Title II claim (POMS SI 02006.005).  Finally, the ALJ concluded that there was no Title II overpayment because the SSI was paid first.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).  A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of

4

the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

In her Brief, Mrs. Woodley does not challenge the finding of disability and award of benefits granted by ALJ Asbille on March 29, 2002; rather, Mrs. Woodley argues that the SSA erred in its method of calculating her retroactive benefits and that ALJ Asbille erred in upholding the SSA calculations. First, Mrs. Woodley argues that she is entitled to a determination of her income and resources before her SSI claim is effectuated. Second, Mrs. Woodley argues that the SSA was required to follow the order of the ALJ which she asserts required the ALJ to make a determination as to Mrs. Woodley's eligibility for SSI and to advise Mrs. Woodley before payment was made. Third, Mrs. Woodley contends that the SSA failed to follow the proper procedures for an overpayment after one had obviously occurred. Fourth, Mrs. Woodley asserts that the SSA violated her privacy rights in notifying the Indiana Township Association, Inc. of the amount of her retroactive SSI benefit amount.

The SSA responds that the SSA's formal policy guidelines set forth in the Program Operations Manual System ("POMS") call for the effectuation in the order that Mrs. Woodley's claims were handled in this case and that there was no overpayment because the POMS efficiently and effectively operated to prevent an overpayment from occurring. Instead, the SSA asserts, this was an "offset" case. The SSA also argues that the text of the ALJ's decision lacks any reference

to the order in which benefits were to be calculated and that Mrs. Woodley has failed to cite any regulation or other applicable law that gives her the right to challenge each and every calculation made by the SSA in processing her claim. Lastly, regarding Mrs. Woodley's privacy claim, the SSA contends that Mrs. Woodley's Agreement with the State not only authorized the State to see her benefit amount, it authorized the State to receive her entire benefit amount.

Having considered the arguments, reviewed ALJ Asbille's decision, and evaluated the relevant law, the Court finds that substantial evidence supports ALJ Asbille's decision and that he did not make an error of law. The Court will address each substantive area of Mrs. Woodley's arguments.

### A.  Calculation of Retroactive Benefits

Mrs. Woodley's primary argument is that the SSA incorrectly calculated her retroactive SSI benefits. Mrs. Woodley argues that the SSA should have calculated her retroactive WIB first, and then, using the means test, the SSA should have calculated her retroactive SSI by taking into account her retroactive WIB benefits as unearned income. Essentially, Mrs. Woodley argues that she has a right to have her retroactive benefits calculated in the same order that her prospective benefits are calculated.

*1.  Statutory Framework*

The Social Security Act ("Act") provides eligible widows, widowers and surviving divorced spouses with benefits under WIB and SSI programs.  Both programs rely on the same disability requirements for eligibility.  However, the WIB program under Title II requires that applicants meet the insurance requirements of that program, which depends upon the work history of a spouse or ex-spouse who is deceased, retired or disabled.  *See* 42 U.S.C. § 401 *et seq*.  In contrast, SSI benefits are paid solely on the basis of economic need.  *See*  42 U.S.C. § 1381 *et seq*.

An individual who meets the disability requirements may have her SSI reduced if her "countable" financial resources exceed a minimum threshold.  Therefore, if an individual is eligible for prospective benefits under both programs, prospective SSI payments may be reduced or eliminated entirely because prospective WIB constitute countable income under the SSI program.  *See* 42 U.S.C. § 1382(c); 20 C.F.R. §§ 416.1121, 416.1123.  This adjustment of prospective SSI benefits to account for the payment of prospective WIB is done automatically under the "means test" to avoid a windfall recovery of SSI benefits and to help ensure that SSI benefits, which are based solely on economic need, are only paid to those recipients truly in need.  *See* 20 C.F.R. § 416.1123.  Mrs. Woodley does not challenge this "means" calculation with respect to her prospective WIB and SSI benefits.  Rather, Mrs. Woodley challenges the calculations of her retroactive WIB and SSI benefits.

When a disabled widow, widower or surviving divorced spouse applies for benefits under both Title II and Title XVI, there is normally a period of time during which the applicant awaits the SSA's determination regarding eligibility for these benefits.  Once the SSA makes an affirmative disability determination, the applicant is entitled to an award of WIB and SSI benefits retroactive

to the date of the initial application. *See White v. Bowen*, 835 F.2d 974, 976 (2nd Cir. 1987). While awaiting that eligibility determination, applicants such as Mrs. Woodley, may apply for and receive interim welfare assistance from their state of residence, in this case, Indiana. These individuals typically enter into a signed agreement with the state that authorizes the SSA to withhold from an eligible recipient's retroactive SSI award an amount sufficient to reimburse the state or local welfare agency for the interim benefits. *See id.* However, only retroactive SSI, not WIB, can be reimbursed back to the state. *See* 42 U.S.C. § 407 (disallowing the assignment of disability insurance benefits); 42 U.S.C. § 1383(g) (authorizing the SSA to pay SSI benefits directly to the state welfare agencies as reimbursement for interim assistance); *see also Philpott v. Essex County Welfare Bd.*, 409 U.S. 413 (1973) (finding that the remittance of disability benefits to state governments is barred by § 407); 20 C.F.R. § 416.525 (permitting the SSA to withhold retroactive SSI benefits due to an individual and to pay them to a state in an amount sufficient to reimburse the state for interim assistance furnished to the individual).

*2. Challenged SSA Procedure Used to Calculate Mrs. Woodley's Retroactive Benefits*

After Mrs. Woodley was awarded WIB and SSI benefits by ALJ Asbille, the SSA calculated Mrs. Woodley's retroactive SSI benefits first in order to reimburse the State for the interim welfare assistance provided to Mrs. Woodley while she awaited the determination of her federal benefits. The SSA first determined that Mrs. Woodley was entitled to $27,604.00 in retroactive SSI benefits. *See* SSA Policy Site: POMS Section SI 02006.005, *available at* https://s044a90.ssa.gov/apps10/poms.nsf/subchapterlist!openview&restricttocategory=05005 (last updated September 12, 2006) (directing that "[b]eginning September 8, 1995, field offices (FOs)

must adjudicate the Supplemental Security Income (SSI) claim before authorizing payment of the retroactive Title II benefits in concurrent Title II/XVI claims").  Pursuant to the Agreement signed by Mrs. Woodley with the State, her initial SSI payment of $27,604.00 was sent to the Indiana Township Association, Inc., which deducted $17,655.98, an amount equal to the public assistance benefits she received while awaiting adjudication of her SSI claim.  The matter was then referred back to the SSA, and the remaining retroactive SSI benefit of $9,948.02 was sent to Mrs. Woodley. The SSA then offset Mrs. Woodley's retroactive WIB benefits otherwise payable by the $27,604.00 in SSI benefits already paid by the SSA.  After further deducting attorneys' fees, the SSA paid Mrs. Woodley the balance due in retroactive WIB benefits.

If Mrs. Woodley's WIB benefits had been calculated first, she would have been ineligible to receive any SSI benefits because the amount of her widow's payments for the months she was eligible exceeded the SSI payment amounts by more than the $20 general income exclusion.  Thus, Mrs. Woodley  would have received her WIB benefits (minus other deductions and attorney fees), and there would have been no retroactive SSI benefits available to reimburse the State for the $17,655.98 in interim assistance previously paid to Mrs. Woodley.  *See* 42 U.S.C. § 407 (prohibiting the assignment of disability benefits); 42 U.S.C. § 1383(g) (permitting the assignment of SSI benefits).  As a result, Mrs. Woodley would have received a windfall in the amount of $17,655.98 for the unreimbursed state interim assistance.[1]

---

[1]  The following example provided by the court in *Lindsay v. Secretary of Health and Human Services*, 612 F. Supp. 366 (D.N.J. 1985) is helpful in explaining the issue in this case regarding the order of payment of the retroactive disability benefits (Title II) and the retroactive SSI benefits (Title XVI) and the impact on reimbursement to the state for interim assistance:

> Suppose the Title II benefits are computed first. Let's say the past-due amount under Title II is $30,000. The claimant gets all of this, since under § 407, these benefits are nonassignable. Then, the Title XVI benefits are calculated, and are found to total $5,000. In the meantime, state welfare has paid out $15,000. The entire $5,000 is paid to the welfare department. But if Title II benefits are paid first, as in this hypothetical, the welfare department is out of pocket $10,000, and the claimant, who

Mrs. Woodley challenges the procedure of calculating her retroactive SSI prior to calculating her retroactive WIB as contradicting the income and resource requirement of the SSA's regulations, as a taking of valuable property, and as a violation of the anti-assignment clause, 42 U.S.C. § 407. She argues that her retroactive benefits should be calculated in the same order that prospective benefits are calculated–WIB and then SSI.  In support, Mrs. Woodley reasons that, because her retroactive WIB and SSI calculations appeared to have been made simultaneously, the SSA should have calculated the offset immediately using the means test, which is used for prospective benefit calculations.  She also contends that the resultant reduction in her benefits and lack of notice and an opportunity for a hearing prior to the calculations violated the Fifth and Fourteenth Amendments. Mrs. Woodley requests that the Court reverse the order of the ALJ and the Appeals Council and restore her incorrectly paid benefits by ordering reimbursement to her Title II Widow's Disability account of SSI amounts incorrectly paid out of her account and deducted from her Title II Widow's Disability benefits, or in the alternative, remand the matter for a correct calculation of SSI benefits due with adjustment to the accounts for amounts paid.  Because all of these arguments seek the same outcome–that the Court order the SSA to calculate her retroactive WIB prior to her retroactive SSI benefits and, thereby, bypass the windfall offset provision–they will be considered collectively in the Court's analysis below.

---

was only entitled to $35,000, is "in pocket" $45,000 (15 + 30).

Now let's suppose the Title XVI benefits are computed first. Now, because Title II "income" is not figured into the needs equation, Title XVI benefits will be much higher-let's say $25,000. The Social Security Administration will pay the welfare department $15,000, pursuant to § 1383(g), and remit the rest to the claimant: $10,000. Now, in calculating Title II benefits, the Social Security Administration will offset the amounts paid under Title XVI that would not have been paid had Title II been computed first. So, having already received $25,000 in payments (15 + 10), and being entitled to $35,000, the Social Security Administration will only remit to the claimant an additional $10,000. In this example, then, the Social Security Administration pays out the same $35,000. But the welfare department is totally reimbursed for an amount it would not have had to pay had claimant originally been deemed disabled, and the claimant gets $10,000 less.

*Lindsay*, 612 F. Supp. at 367.

3. *Analysis*

It is well settled in numerous United States Courts of Appeals that the SSA may first calculate and pay retroactive SSI, including repayment of state interim assistance, and then calculate the retroactive disability insurance benefits ("DIB")[2] and offset the retroactive DIB benefits by the amount of the retroactive SSI without violating § 1320a-6 or § 407.  *See Splude v. Apfel*, 165 F.3d 85, 89-90 (1st Cir. 1999); *Sheppard v. Sullivan*, 906 F.2d 756, 761 n. 3 (D.C. Cir. 1990); *White*, 835 F.2d at 978-79 (2d Cir.); *McKenzie v. Bowen*, 787 F.2d 1216, 1218, 1222 (8th Cir. 1986); *Wheeler v. Heckler*, 787 F.2d 101, 106 (3rd Cir. 1986) (addressing the appropriate calculation of attorney fees for a DIB application when the offset provision is applied to concurrent, retroactive applications for DIB and SSI); *see also Detson v. Schweiker*, 788 F.2d 372, 375 (6th Cir. 1986) (holding that the application of the offset provision of § 1320a-6 is appropriate for concurrent, retroactive DIB and SSI awards but not considering the issue of repayment of state interim assistance); *Cuthbert v. Secretary of HHS*, 784 F.2d 1157, 1160 (4th Cir. 1985) (same).  The Court finds persuasive the reasoning of these courts, as set forth in detail below.

a.  42 U.S.C. § 1320a-6, the Windfall Offset Provision

In the early 1980s, Congress drafted the original windfall provision, 42 U.S.C. § 1320a-6, to address situations in which recipients received "double" payments when they qualified for both DIB and SSI payments ("concurrent claimants").  The windfall offset provision allowed for a

---

[2] Title II disability benefits are referred to as Social Security Disability Benefits ("SSDI") and include several types of benefits including Disability Insurance Benefits ("DIB") and Widow's Insurance Benefits ("WIB").  Throughout its analysis, the Court will reference cases in which courts have addressed similar issues to those present in this case except in the context of other Title II disability benefits, primarily DIB.  The Court finds that the reasoning used to examine these issues in the context of DIB cases is directly applicable to WIB issues, as exist in this case.

reduction of benefits so that the recipient would not receive the full amount of both DIB and SSI

benefits.  42 U.S.C. § 1320a-6 (1982).  Following challenges to that original language by some

claimants who argued that the statute should only apply to individuals who received SSI, but not to

concurrent claimants, Congress amended the statute in 1984 to clarify the statute's applicability.

*See McKenzie*, 787 F.2d at 1220-21 (citing Deficit Reduction Act of 1984, Pub.L.No. 98-369, §

2615, 6A U.S. Code Cong. & Adm. News (98 Stat.) 1132 (1984)).

Section 1320a-6 provides:

(a) Reduction in benefits
Notwithstanding any other provision of this chapter, in any case where an
individual--

(1) is entitled to benefits under subchapter II of this chapter that were not paid in the
months in which they were regularly due; and

(2) is an individual or eligible spouse eligible for supplemental security income
benefits for one or more months in which the benefits referred to in clause (1) were regularly due,

then any benefits under subchapter II of this chapter that were regularly due in such
month or months, or supplemental security income benefits for such month or
months, which are due but have not been paid to such individual or eligible spouse
shall be reduced by an amount equal to so much of the supplemental security income
benefits, whether or not paid retroactively, as would not have been paid or would not
be paid with respect to such individual or spouse if he had received such benefits
under subchapter II of this chapter in the month or months in which they were
regularly due. A benefit under subchapter II of this chapter shall not be reduced
pursuant to the preceding sentence to the extent that any amount of such benefit
would not otherwise be available for payment in full of the maximum fee which may
be recovered from such benefit by an attorney pursuant to subsection (a)(4) or (b) of
section 406 of this title.

(b) "Supplemental security income benefits" defined
For purposes of this section, the term "supplemental security income benefits" means
benefits paid or payable by the Commissioner of Social Security under subchapter
XVI of this chapter, including State supplementary payments under an agreement
pursuant to section 1382e(a) of this title or an administration agreement under
section 212(b) of Public Law 93-66.

12

(c) Reimbursement of the State

From the amount of the reduction made under subsection (a) of this section, the Commissioner of Social Security shall reimburse the State on behalf of which supplementary payments were made for the amount (if any) by which such State's expenditures on account of such supplementary payments for the month or months involved exceeded the expenditures which the State would have made (for such month or months) if the individual had received the benefits under subchapter II of this chapter at the times they were regularly due. An amount equal to the portion of such reduction remaining after reimbursement of the State under the preceding sentence shall be covered into the general fund of the Treasury.

42 U.S.C. § 1320a-6.

In subsequent challenges to this amended statute, several United States Courts of Appeals held that § 1320a-6, as amended, did not preclude the SSA from continuing its policy of calculating retroactive SSI benefits prior to computing retroactive DIB benefits. *See, e.g.*, *Splude*, 165 F.3d at 89-90 (1st Cir.); *Sheppard*, 906 F.3d at 761 (D.C. Cir); *White*, 835 F.2d at 978 (2d Cir.); *Detson*, 788 F.2d at 375 (6th Cir.); *McKenzie*, 787 F.2d at 1219-20 (8th Cir.); *Wheeler*, 787 F.2d at 106 (3d Cir.); *Cuthbert*, 784 F.2d at 1160 (4th Cir.).

The court in *White* noted that Congress explicitly addressed the situation at issue of concurrent applications for DIB and SSI by making the windfall offset provision in the amended version of § 1320a-6 applicable "whether or not [SSI benefits are] paid retroactively." *White*, 835 F.2d at 978; *see also Sheppard*, 906 F.2d at 761 (holding that the offset is not "inappropriate when the agency makes the retroactive eligibility determination for both at the same time"); *McKenzie*, 787 F.2d at 1219-21 (holding that the "statute clearly applies to concurrent adjudications of [DIB] and SSI benefits" and that the statute "certainly does not prohibit the calculation of SSI benefits first in concurrent applications").[3] More importantly, nothing in § 1320a-6 "precludes the [SSA] from

---

[3] Although not at issue in this case, the amended statute also provides the SSA with the option of reducing retroactive SSI benefits in lieu of retroactive DIB benefits. *White*, 835 F.2d at 978. The 1984 amendment added this language to preclude a windfall of federal benefits when a retroactive DIB award is made prior to the retroactive SSI

13

continuing its policy of calculating retroactive SSI benefits prior to retroactive [DIB]." *White*, 835 F.2d at 978; *see also McKenzie*, 787 F.2d at 1219.

Finally, the SSA's practice of offsetting a retroactive WIB award by the amount of a retroactive SSI award "advances the express congressional purpose to prevent windfalls to retroactive beneficiaries." *Sheppard*, 906 F.2d at 761 (citing *McKenzie*, 787 F.2d at 1219-20 (quoting S. Rep. No. 408, 98th Cong., 2d Sess. 78 (1980)), U.S. Code Cong. & Admin. News 1980, pp. 1277, 1356); *White*, 835 F.2d at 977 n.2; *Wheeler*, 787 F.2d at 105-06); *see also Cuthbert*, 784 F.2d at 1160.

> Congress intended to prevent windfalls and did not draw distinctions between the desire to reimburse local welfare agencies in the case where a person who received interim assistance once contributed to the social security fund and the case where a disabled person never so contributed. While former employment and contributions to the social security fund are prerequisites to receipt of [DIB], nothing suggests that Congress intended to reimburse to a lesser extent the local welfare agencies that provide interim assistance where the claimant currently meets the welfare assistance needs test. The windfall which concerned Congress relates both to offsetting retroactive [DIB] and SSI benefits and to offsetting these federal disability benefits and local welfare assistance.

*McKenzie*, 787 F.2d at 1221 (citing *Gallo v. Heckler*, 600 F. Supp. 1513, 1519 (E.D.N.Y. 1985); *Lindsay v. Secretary of Health and Human Srvcs.*, 612 F. Supp. 366, 368 (D.N.J. 1985)).

This is exactly the type of windfall Mrs. Woodley indirectly seeks to reap. In her arguments, Mrs. Woodley asserts that her WIB benefits should have been calculated first, which would have led the SSA to find that she was not eligible for any of the retroactive $27,604.00 in SSI under the windfall offset statute. Although SSI can be paid to the states by the SSA as reimbursement for interim assistance pursuant to § 1383(g), WIB cannot be assigned, *see* 42 U.S.C. § 407. Thus,

---

award. *See White*, 835 F.2d at 978 n. 2.

14

under her methodology, Mrs. Woodley would not receive any SSI, including the $9,948.02 she actually received payment for but would receive the full retroactive WIB amount and would not have to pay back any of the $17,655.98 she received while awaiting the determination of her federal benefits, creating a windfall of $17,655.98 in Mrs. Woodley's favor.

If the SSA were to calculate her retroactive benefits by applying the means test, as is done for prospective benefits and as requested by Mrs. Woodley, Mrs. Woodley would effectively bypass her responsibilities and obligations to the State to reimburse the interim assistance. Such a result would "defeat the intent of Congress that a claimant receive no more in retroactive benefits than he would have received had those benefits been paid prospectively." *White*, 835 F.2d at 978-79.

This windfall provision is the well established procedure utilized by the SSA to calculate retroactive benefits, yet Mrs. Woodley argues that the means test, utilized for calculating prospective benefits, should be used instead. However, Mrs. Woodley provides no explanation why the persuasive appellate case law upholding the practice should be ignored or why the State should not be reimbursed. Mrs. Woodley has not suggested, nor can the Court imagine any reason, why Congress would want her to receive the windfall that she seeks. *See Sheppard*, 906 F.2d at 761. Importantly, although Mrs. Woodley ultimately received less in her final retroactive WIB payment, she had actually received the sum of that reduction in the form of interim assistance from the State over the course of the years she awaited her federal benefits and from the SSA in her remaining retroactive SSI payment of $9,948.02. In the end, she received the same sum of money, just from different sources.

The Court finds that the SSA's practice of calculating retroactive SSI benefits prior to retroactive WIB benefits for concurrent, retroactive applications is consistent with the language of

§ 1320a-6.  The Court further finds that ALJ Asbille was correct in determining that the SSA reasonably calculated Mrs. Woodley's retroactive SSI benefits first in order to ensure that the State received reimbursement for interim funds previously disbursed to Mrs. Woodley.

b.  42 U.S.C. § 407 - The Anti-Assignment Clause of the Act

Mrs. Woodley also argues that taking of incorrect SSI payments pursuant to the assignment Agreement with the Township Trustee violates the anti-assignment clause of the Social Security Act, 42 U.S.C. § 407.

The anti-assignment clause provides, in relevant part:

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

42 U.S.C. § 407.  By the language of the statute, the assignment of benefits to any creditor is impermissible, unless Congress expressly provides otherwise.  In *Philpott*, the Supreme Court held that state welfare agencies constitute creditors for the purposes of § 407.  409 U.S. 413.  However, pursuant to 42 U.S.C. § 1383(g),[4] Congress has authorized the SSA to pay SSI benefits directly to

---

[4] 42 U.S.C. § 1383(g), entitled "Reimbursement to States for interim assistance payments," provides, in relevant part:

(1) Notwithstanding subsection (d)(1) of this section and subsection (b) of this section as it relates to the payment of less than the correct amount of benefits, the Commissioner of Social Security may, upon written authorization by an individual, withhold benefits due with respect to that individual and may pay to a State (or a political subdivision thereof if agreed to by the Commissioner of Social Security and the State) from the benefits withheld an amount sufficient to reimburse the State (or political subdivision) for interim assistance furnished on behalf of the individual by the State (or political subdivision).

state welfare agencies, upon written authorization of the beneficiary, as reimbursement for interim assistance.  No such similar provision has been enacted with regard to WIB.

Mrs. Woodley argues that the anti-assignment clause was violated because her Title II benefits were offset by the amount of money sent to the Trustee as an incorrect payment of SSI benefits. Thus, Mrs. Woodley appears to claim that the SSA's application of the windfall offset provision at § 1320a-6 to offset her retroactive WIB by the amount of the retroactive SSI payment essentially transforms her WIB into SSI to circumvent § 407 and allow an alienation of her WIB by the amount of reimbursement to the State.

Practically, this is simply not the case.  Although Mrs. Woodley's retroactive WIB were reduced by the sum of her retroactive SSI, some of which were reimbursed to the State, Mrs. Woodley's WIB were not reimbursed by the SSA to the State.  Rather, the SSA sent Mrs. Woodley's initial payment of retroactive SSI benefits ($27,604.00) to the Indiana Township Association, Inc. to reimburse the State for the interim assistance received by Mrs. Woodley, as is permitted by 42

---

(2) For purposes of this subsection, the term "benefits" with respect to any individual means supplemental security income benefits under this subchapter, and any State supplementary payments under section 1382e of this title or under section 212 of Public Law 93-66 which the Commissioner of Social Security makes on behalf of a State (or political subdivision thereof), that the Commissioner of Social Security has determined to be due with respect to the individual at the time the Commissioner of Social Security makes the first payment of benefits with respect to the period described in clause (A) or (B) of paragraph (3). A cash advance made pursuant to subsection (a)(4)(A) of this section shall not be considered as the first payment of benefits for purposes of the preceding sentence.

(3) For purposes of this subsection, the term "interim assistance" with respect to any individual means assistance financed from State or local funds and furnished for meeting basic needs (A) during the period, beginning with the month following the month in which the individual filed an application for benefits (as defined in paragraph (2)), for which he was eligible for such benefits, or (B) during the period beginning with the first month for which the individual's benefits (as defined in paragraph (2)) have been terminated or suspended if the individual was subsequently found to have been eligible for such benefits.

42 U.S.C. § 1383(g).

U.S.C. § 1383(g) and 20 C.F.R. § 416.525.  Only Mrs. Woodley's SSI monies were paid to the State. As other courts have recognized, there is no statutory guidance in either § 407 or § 1320a-6 as to the order in which retroactive benefits are to be calculated.  *See White*, 835 F.2d at 978; *McKenzie*, 787 F.2d at 1221.  However, as discussed above, Congress did intend to prevent a windfall of benefits, and the SSA is "justified in first calculating [retroactive] SSI benefits and then adjusting the disability payment as a way of avoiding either a violation of § 407 or a windfall to plaintiff, at the same time compensating the state government for its tender of interim assistance." *Sheppard*, 906 F.2d at 761 n.3 (citing *Gallo v. Heckler*, 600 F. Supp. 1513 (E.D.N.Y. 1985); *see also White*, 835 F.2d at 978 (citing *McKenzie*, 787 F.2d at 1221).

The court in *White* found that the SSA's policy of preventing windfalls, whether by federal or state monies, "is consistent with the overall framework of the Act which contemplates shared federal and state responsibility for funding and administering benefits programs." *White*, 835 F.2d at 978 (citation and internal quotation marks omitted).  Moreover, allowing the SSA first to calculate retroactive SSI benefits ensures the availability of funds to reimburse state welfare agencies providing interim assistance. *Splude*, 165 F.3d at 90; *White*, 835 F.2d at 979 (citing *Wheeler*, 787 F.2d at 107).  Notably, Mrs. Woodley accepted the interim assistance from the State knowing that it would later have to be paid back from her retroactive SSI pursuant to their Agreement.  Finally, as set forth in Part A, the Court has already found that the SSA's policy of calculating retroactive SSI benefits prior to retroactive WIB is proper and justified as a means to ensure the compensation of states for interim assistance and to avoid a windfall to claimants who would not have to reimburse state interim assistance.

The Court finds that § 407 does not confer a right to have retroactive WIB calculated prior to retroactive SSI benefits. Nor is the Court willing to characterize the retroactive SSI benefits from which the reimbursement for interim assistance was deducted as the equivalent of Mrs. Woodley's retroactive WIB. *See Splude*, 165 F.3d at 89-90 (declining to characterize retroactive SSI benefits from which interim assistance was deducted as retroactive DIB benefits). The Court also finds that the SSA's approach to calculating retroactive SSI benefits and reimbursing state interim assistance therefrom prior to retroactive WIB constitutes a proper exercise of discretion and is not arbitrary or capricious. *See White*, 835 F.2d at 979 (citing *Heckler v. Campbell*, 461 U.S. 458, 466 (1983) (holding that the SSA's interpretation of provisions of the Act may not be disturbed by a court unless either arbitrary and capricious or outside the Secretary's statutory authority)); *Wheeler*, 787 F.2d at 106. *Cf. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984).

Therefore, ALJ Asbille did not err in upholding the calculation of Mrs. Woodley's benefits.


c.  Constitutional Claims

In her Brief, Mrs. Woodley argues that she was denied due process and equal protection under the Fifth and Fourteenth Amendments to the United States Constitution when the SSA did not provide her notice and an opportunity to be heard prior to forwarding her initial payment of retroactive SSI benefits to the State. She also claims that the payment to the State constitutes a taking of a valuable property right.

First, Mrs. Woodley argues that her due process rights were violated when the SSA failed to provide her notice and the opportunity to be heard regarding the forwarding of retroactive SSI to

the State.  However, the benefit calculations by the SSA, including the reimbursement to the State and the offset of Mrs. Woodley's WIB, were made in the course of determining what monies Mrs. Woodley was initially due.  The government was hardly obliged to pay out monies before initially determining what was due or to give Mrs. Woodley notice before having determined what monies she was initially due.  *See Splude*, 165 F.3d at 91.

Mrs. Woodley also argues that the payment to the State represents a taking of a valuable property right "as anticipated by the Supreme Court" in *Goldberg v. Kelly*, 397 U.S. 254 (1970). Pl. Br., p. 8.  However, the Court has already held, as supported by substantial, persuasive case law, uncontested by Mrs. Woodley, that the retroactive SSI benefits that were used to reimburse the State for interim assistance were not the equivalent of her retroactive WIB, nor is the Court willing to characterize the retroactive SSI as retroactive WIB for that transaction.

In support of her position that the payment to the State was a taking of a valuable property right, Mrs. Woodley generally cites *Goldberg v. Kelly*, 397 U.S. 254 (1970), without further analysis.  In *Goldberg*, the Supreme Court found that the termination of public assistance to a recipient without affording him an opportunity for an evidentiary hearing prior to the *termination* of benefits denied the recipient procedural due process.  397 U.S. at 261.  There is no termination of benefits at issue in Mrs. Woodley's case.  Instead, the calculation of Mrs. Woodley's retroactive SSI benefits, including the payment to the State, constitutes an initial, internal SSA determination of benefits.  Prior to the calculation, Mrs. Woodley was not yet receiving SSI benefits, nor was she awarded any amount of benefits, unlike the welfare recipients in *Goldberg*, who were already receiving public assistance when it was terminated.  The Court has found that the SSA used a proper procedure to calculate Mrs. Woodley's retroactive benefits.  She was first paid the full amount of

20

retroactive SSI benefits to which she was entitled, some of which was paid earlier by the State in interim assistance for Mrs. Woodley's benefit.  The SSA then reduced her retroactive WIB under the windfall offset statute to account for the excess SSI to which Mrs. Woodley was not entitled. Accordingly, neither the reimbursement from her retroactive SSI nor the deduction from her WIB for the previously paid SSI constitutes a taking or a wrongful interference with a property interest, *see Splude*, 165 F.3d at 91, and there was no requirement of notice and an opportunity to be heard. Nor was Mrs. Woodley denied a post-determination opportunity for a hearing once she received notice of the calculations and of the sixty-day appeal period.  Mrs. Woodley had a hearing before an ALJ, whose decision Mrs. Woodley has appealed to the Appeals Council and to this Court.

In support of her constitutional arguments, Mrs. Woodley also cites *Califano v. Yamasaki*, 442 U.S. 682 (1979), without further analysis, for its holding that notice is a fundamental right when the government executes its right to take a valuable property interest.  However, there was not a taking of a valuable property interest in this case.  In *Califano*, the SSA determined that certain social security beneficiaries had been overpaid and sought to recoup those overpayments by withholding future benefits to which respondents would otherwise be entitled.  442 U.S. at 684.  The Supreme Court held that, under 42 U.S.C. § 404(a), as to a reconsideration of whether overpayment occurred, neither the statute nor the Constitution required an oral hearing prior to the withholding of future benefits, and that under 42 U.S.C. § 404(b), as to waiver of the SSA's right to recoup, the statute itself required a hearing, so the Court did not reach the constitutional issue.

As set forth in detail in Part C below, Mrs. Woodley did not receive an erroneous "overpayment" within the meaning of § 404 because she did not receive excess monies to which she was not due, unlike the recipients in *Califano*.  The SSA used an offset method to calculate her

21

retroactive WIB, reducing those benefits by the amount of retroactive SSI benefits already paid, pursuant to the procedures set forth in 42 U.S.C. § 1320a-6; there was no recoupment from Mrs. Woodley's prospective benefits under § 404 as in *Califano*.  Mrs. Woodley has not explained why the application of the windfall clause invokes the same rights as the application of the statutory recoupment clause.  For example, the limit within § 404(b) on the recoupment authority conferred on the SSA under § 404(a)(1) requires a finding of "no fault" by the beneficiary in order for the limitation to apply and the recoupment to be waived.  *See* 42 U.S.C. § 404(b);[5] *see also Califano*, 442 U.S. at 685-86.  As a result, a pre-recoupment hearing is necessary.  No such subjective element of fault is present in the utilization of the windfall provision to calculate Mrs. Woodley's retroactive WIB and SSI benefits.

Two other significant differences between the present case and the benefits under consideration in *Califano* and *Goldberg* demonstrate that Mrs. Woodley did not have a protected interest in the calculation of her retroactive benefits.  First, *Goldberg* and *Califano* dealt with the termination or reduction of *future* benefit payments.  In the present case, Mrs. Woodley is challenging the calculation of her retroactive benefits, which she was to receive in a lump sum payment, in addition to her monthly, prospective benefits.  The calculation of her retroactive benefits

---

[5] 42 U.S.C. § 404(b), entitled "No recovery from persons without fault," provides:

In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience. In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language).

42 U.S.C. § 404 (b).

in no way impacted her continuing eligibility for prospective benefits, *compare Goldberg*, nor did it reduce her *prospective* benefits to reimburse the SSA for a past overpayment,[6] *compare Califano*.

Second, the Supreme Court in *Goldberg* and *Califano* was concerned with the termination or reduction of benefits that are the very means by which the recipient has to live while appealing or seeking reconsideration of the decision to terminate or reduce benefits, which in turn adversely affects the recipient's ability to seek a remedy with the government to reinstate her benefits. *See Califano*, 442 U.S. at 686 (citing 20 C.F.R. § 404.508(a)); *Goldberg*, 397 U.S. at 264. Mrs. Woodley's situation was quite the opposite. Mrs. Woodley was able to avoid such adverse living conditions while she awaited a determination of her federal benefits, by receiving State interim assistance beginning in 1997. Once she was found to meet the disability eligibility requirements for federal WIB and SSI, the SSA proceeded to calculate both her retroactive and her prospective benefits separately. In calculating her retroactive benefits, the SSA reimbursed the State for the interim assistance received by Mrs. Woodley and paid Mrs. Woodley the remaining benefits. This calculation in no way reduced her prospective benefits.

In arguing that she had a right to notice and a hearing to challenge this procedure prior to the calculation of her benefits, Mrs. Woodley explains that she would have argued that her retroactive WIB should have been calculated first under the means method, as is done for prospective benefits. Although she does not so state in her argument, the advantage to this calculation is that Mrs. Woodley would not be required to pay back the state for its interim assistance, which would net Mrs. Woodley a windfall of $17,655.98. This windfall is hardly

_____

[6] Again, the initial payment of retroactive SSI benefits is not considered a statutory overpayment. *See infra* Part C.

23

comparable to the interests of the beneficiaries in *Goldberg* and *Califano* who were facing the termination or reduction of future benefits on which they relied for their daily existence.

Based on the foregoing, Mrs. Woodley's procedural due process and takings claims must fail.

## B. ALJ Asbille's Decision

Mrs. Woodley contends that the language used in ALJ Asbille's March 29, 2002 decision required the SSA to calculate her retroactive WIB prior to calculating her retroactive SSI and to consider those retroactive WIB as a resource or income under the means test when calculating her SSI payments. Mrs. Woodley relies on the following excerpt from ALJ Asbille's decision for this contention:

> It is the decision of the Administrative Law Judge that, based on the application filed on October 7, 1997, the claimant has been disabled commencing March 1, 1997, and therefore meets the medical eligibility requirements for Disabled Widow's Insurance Benefits under sections 202(e) and 223 of the Social Security Act.

> It is the further decision of the Administrative Law Judge that, based on the application filed on October 7, 1997, the claimant was disabled under section 1614(a)(3)(A) of the Social Security Act, beginning March 1, 1997, and that the claimant's disability has continued at least through the date of this decision.

> The component of the Social Security Administration responsible for authorizing Supplemental Security Income payments will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

Pl. Br., p. 6.

A careful reading of ALJ Asbille's March 29, 2002 decision, including the cited portion, reveals that the ALJ did not include any direction to the SSA on the order in which the retroactive WIB and SSI benefits were to be calculated. A more reasonable interpretation of the decision is that the ALJ made separate findings in the first two paragraphs as to Mrs. Woodley's entitlement to WIB

24

and SSI benefits and then ordered, in a third paragraph, that the SSA must make a determination of whether Mrs. Woodley qualified for SSI based on resources and income.  The simple fact of the order of the finding of entitlement to WIB in the first paragraph and the finding of entitlement to SSI in a subsequent paragraph does not mandate that the SSA make its calculations in that order. Moreover, there is nothing in the decision suggesting that the SSA should not follow their regular internal processes or guidelines for determining payment of retroactive benefits.

As ALJ Asbille noted in his April 20, 2005 decision, had the SSA applied his March 29, 2002 decision in the manner suggested by Mrs. Woodley and calculated Mrs. Woodley's retroactive WIB first and then applied the means test counting the retroactive WIB in the calculation of the retroactive SSI, Mrs. Woodley would have received a windfall and the State would not have been reimbursed for the interim assistance of which Mrs. Woodley was a beneficiary.  The SSA did not violate ALJ Asbille's March 29, 2002 Order in its calculation of Mrs. Woodley's retroactive benefits.

### C.  Overpayment

Mrs. Woodley argues that a statutory overpayment was created when the SSA calculated her retroactive SSI benefits without counting her retroactive WIB as income.  She further argues that this was a statutory overpayment and thus she was entitled to certain notice and waiver rights.

42 U.S.C. § 404 provides:

(a) Procedure for adjustment or recovery

(1) Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of Social Security, as follows:

25

(A) With respect *to payment to a person of more than the correct amount*, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall obtain recovery by means of reduction in tax refunds based on notice to the Secretary of the Treasury as permitted under section 3720A of Title 31, or shall apply any combination of the foregoing. A payment made under this subchapter on the basis of an erroneous report of death by the Department of Defense of an individual in the line of duty while he is a member of the uniformed services (as defined in section 410(m) of this title) on active duty (as defined in section 410(l) of this title) shall not be considered an incorrect payment for any month prior to the month such Department notifies the Commissioner of Social Security that such individual is alive.

42 U.S.C. § 404(a)(1)(A) (emphasis added) (§ 204 of the Social Security Act).

The regulations also address overpayment.  Regarding WIB overpayments:

(a) In general. Section 204 of the Act provides for adjustment as set forth in §§ 404.502 and 404.503, in cases where an individual has *received more or less than the correct payment due under title II of the Act*. As used in this subpart, the term overpayment includes a payment in excess of the amount due under title II of the Act, a payment resulting from the failure to impose deductions or to suspend or reduce benefits under sections 203, 222(b), 224, and 228(c), and (d), and (e) of the Act (see Subpart E of this part), a payment pursuant to section 205(n) of the Act in an amount in excess of the amount to which the individual is entitled under section 202 or 223 of the Act, a payment resulting from the failure to terminate benefits, and a payment where no amount is payable under title II of the Act.

20 C.F.R. § 404.501(a) (emphasis added).

Regarding SSI overpayments, the regulations provide:

(a) Overpayments. As used in this subpart, the term overpayment means payment of more than the amount due for any period, including any amounts of State supplementary payments which are due and administered by the Social Security Administration. For purposes of this section, payment has been made when certified by the Social Security Administration to the Department of the Treasury, except that payment has not been made where payment has not been received by the designated payee, or where payment was returned. When a payment of more than the amount due is made by direct deposit to a financial institution to or on behalf of an individual who has died, and the financial institution credits the payment to a joint account of

the deceased individual and another person who is the surviving spouse of the deceased individual and was eligible for a payment under title XVI of the Act (including any State supplementation payment paid by the Commissioner) as an eligible spouse (or as either member of an eligible couple) for the month in which the deceased individual died, the amount of the payment in excess of the correct amount will be an overpayment to the surviving spouse.

20 C.F.R. § 416.537(a).   The section regarding SSI benefits entitled "Underpayments and Overpayments" provides, in relevant part:

(a) General. When an individual receives SSI benefits of less than the correct amount, adjustment is effected as described in §§ 416.542 and 416.543, and the additional rules in § 416.545 may apply. When an individual receives *more* than the correct amount of SSI benefits, adjustment is effected as described in § 416.570. Refund of overpayments is discussed in § 416.560 and waiver of recovery of overpayments is discussed in §§ 416.550 through 416.555.

20 C.F.R. § 416.535(a) (emphasis added).

Under the statute and the regulations, Mrs. Woodley must demonstrate that she "received" more than the correct retroactive SSI payment that she was due.  Mrs. Woodley first received $9,948.02, which was the remainder of her retroactive SSI benefits ($27,604.00),  after the SSA had reimbursed the State for the interim assistance.  The SSA then calculated her retroactive WIB.  Applying the windfall offset statute, 42 U.S.C. § 1320a-6, the SSA deducted from her retroactive WIB the amount already paid in retroactive SSI benefits (to Mrs. Woodley and the State), in addition to attorney fees, and sent Mrs. Woodley a check for the balance.  Mrs. Woodley argues that the letter she received dated May 14, 2002, in which the SSA explains the reduction in her retroactive WIB demonstrates the overpayment.  However, the SSA does not utilize the term "overpayment," but rather explains that the lump sum retroactive WIB payment was being reduced because she had already received the retroactive SSI money for October 1997 through June 2002.  R. at 323.  The letter further explains that the SSA makes the reduction "to make sure that your total SSI and Social

27

Security monthly payment is not more than it would have been if the Social Security benefits had been paid on time." *Id.*

At no time was Mrs. Woodley paid more than she should have been at any step of the analysis. The Court has already found, as set forth in Part A above, that the SSA properly calculated Mrs. Woodley's retroactive SSI benefits prior to calculating her retroactive WIB. Although the SSA later determined that her retroactive WIB should be offset by the retroactive SSI paid to Mrs. Woodley, Mrs. Woodley was eligible for the retroactive SSI benefits at the time the SSA calculated them to be $27,604.00. At no time does Mrs. Woodley argue that the calculation of $27,604.00 in retroactive SSI benefits was the incorrect dollar amount at the time of the calculation.

Because Mrs. Woodley never actually received more or less than the correct payment due under the Act at any point in the calculation of benefits, the application of the windfall offset provision did not constitute an overpayment. Accordingly, ALJ Asbille did not err in finding no overpayment. Moreover, Mrs. Woodley was not entitled to the special notice and hearing requirements applicable to overpayments and thus Mrs. Woodley's equal protection argument relating to an alleged overpayment is inapplicable.

### D. Privacy

Mrs. Woodley argues that the SSA violated her privacy rights in notifying the Indiana Township Association, Inc. of the amount of her retroactive SSI benefit amount. She asserts that she was not entitled to the $27,604.00 nor was the Trustee entitled to notice that she was to receive $27,604.00. Mrs. Woodley contends that her consent is only contained in the assignment of benefits

which provides for the assignment of her SSI benefits to which the Trustee is entitled which was not $27,604.00.

The Court finds that Mrs. Woodley's privacy claim is without merit.  The Agreement gave the Indiana Township Association, Inc the right to receive her "initial payment of Social Security Income benefits" and to "deduct from [her] initial payment an amount equal to the sum of all public assistance benefits made to, or on behalf of, [her] by the State of Indiana, or a political subdivision thereof, beginning with the day of the month I am found eligible for an SSI payment and ending with (and including) the month my SSI payments begin."  R. at 319.  Thus, the reimbursement authorization signed by Mrs. Woodley clearly anticipated that the Indiana Township Association, Inc. would be informed of Mrs. Woodley's benefit amount.  Furthermore, as discussed in detail in Part C above, Mrs. Woodley was eligible for the retroactive SSI benefits at the time the SSA calculated them to be $27,604.00.

## CONCLUSION

For the foregoing reasons, the Court finds that ALJ Asbille did not commit legal error and his decision was supported by substantial evidence.  Therefore, the Court **DENIES** the Plaintiff's Opening Brief [DE 12].  The Court **REAFFIRMS** the ALJ's decision in all respects.

SO ORDERED this 28th day of September, 2006.


s/ Paul R. Cherry
MAGISTRATE JUDGE CHERRY
UNITED STATES DISTRICT COURT

cc:      All counsel of record

29